IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| HUBERT A. | * | |
|---|---|---|
| | * | |
| v. | * | Civil Case No. GLR-18-3444 |
| | * | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). ECF 6. I have considered the parties' cross-dispositive motions, and Plaintiff's reply. ECF 16, 18, 19. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that both motions be denied, that the SSA's decision be reversed in part, and that the case be remanded to the SSA for further analysis.

Plaintiff filed an application for Supplemental Security Income on December 6, 2016, alleging a disability onset of September 26, 2016. Tr. 176-81. His application was denied initially and on reconsideration. Tr. 94-97, 111-12. An Administrative Law Judge ("ALJ") held a hearing on May 8, 2018, at which Plaintiff was represented by counsel. Tr. 31-64. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 17-25. The Appeals Council denied Plaintiff's request for review, Tr. 1-5 so the ALJ's decision constitutes the final, reviewable decision of the SSA.

Although not specifically stated, it appears from the decision that the ALJ believed Plaintiff to suffer from the following medically determinable impairments:

> a history of hypertension, plantar fasciitis, hernia, hyperlipidemia, obesity, chronic pain syndrome, sleep disorder, pruritus of the skin, acanthosis nigricans, hepatitis C, vitamin D deficiency, allergies, gastroesophageal reflux disease (GERD), pre-diabetes, chronic obstructive pulmonary disease (COPD), lumbar degenerative disc disease, right knee pain, and shoulder impairments, including bicipital tendinitis left shoulder, left shoulder impingement, and partial tear and retraction of the anterior fibers of the supraspinatus muscle left shoulder,

Tr. 20, in addition to "Major Depressive Disorder, Unspecified Depressive Disorder, and Unspecified Intellectual Disability," Tr. 23. The ALJ concluded, however, that Plaintiff did not have a severe impairment or combination of impairments. Tr. 19. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 25.

Plaintiff disagrees, raising two primary arguments. First, he contends that the ALJ improperly applied the standard for finding a severe impairment, and second, he contends that the presiding ALJ was not properly appointed under the Appointments Clause of the United States Constitution. Because I agree that the ALJ improperly assessed whether Plaintiff's conditions, individually or collectively, were severe, I have not addressed whether Plaintiff has forfeited his right to challenge the constitutionality of the ALJ's appointment. In recommending remand of the case for further consideration, I express no opinion as to whether the ALJ's ultimate decision that Plaintiff was not disabled was correct.

Plaintiff contends that the ALJ incorrectly deemed all of his various medically determinable impairments to be nonsevere. Importantly, a claimant's burden of showing a severe impairment at step two is only a "*de minimis* screening device used to dispose of groundless claims." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012) (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)) (emphasis added); *see*

*also Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (unpublished) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement.") (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (2011)). Accordingly, any doubt or ambiguity in the evidence at step two should be resolved in the claimant's favor, and the ALJ should continue with the sequential evaluation. *See* SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985).

Initially, I note that the ALJ's opinion misapprehends Plaintiff's work immediately prior to his alleged onset date. The ALJ stated the following:

> For example, the claimant worked at substantial gainful activity levels as a cook and dishwasher for two quarters before he stopped working in September 2016 (Ex. 4E). He indicated that the job involved lifting heavy racks of dishes and doing a lot of bending, lifting, and standing on his feet (*Id.*). However, he stopped working because he was in a work release program and the company he was working with shut down due to public health reasons. (Ex. 2E).

Tr. 21. In fact, however, the medical records reflect that Plaintiff injured his left shoulder in a fall in August, 2016. *See, e.g.*, Tr. 388. Plaintiff testified that after the fall, his work was limited to "just prep[ping] the food," such as "cutting carrots," until the company shut down about one month after his injury. Tr. 40-41, 356. Accordingly, the ALJ's statement that, "There is no medical evidence of record showing injury or significant worsening in his condition near the time of his alleged onset date," Tr. 21, is incorrect, because while Plaintiff did not seek immediate medical care, he reported the fall to physicians weeks later. In addition, Plaintiff's testimony that he would have continued to work if his job had not shut down did not indicate an ability to continue employment requiring heavy lifting, given his light to sedentary food preparation responsibilities at the time of the closure.

The ALJ also failed to support his findings with substantial evidence as to some of Plaintiff's medically determinable impairments. First, looking at the evidence relating to Plaintiff's left shoulder impairments, an MRI provided objective medical evidence of injury, including a

"partial tear and retraction of the anterior fibers of the supraspinatus muscle, and minimal bicipital tendonitis." Tr. 21, 403-04. Beginning as early as February, 2017, Plaintiff's examinations corroborated his reported shoulder injury. At a consultative examination with Dr. Isaacs, Plaintiff exhibited tenderness in his left shoulder, "splinted his left shoulder when testing for range of motion . . . intermittently held his left arm with his right hand to keep his left arm from swinging," and "had difficulty with lifting/carrying," in addition to demonstrating "reduced left shoulder and neck range of motion." Tr. 22, 341-43. Thus, objective medical evidence established both the existence of the injury and the resulting effects on Plaintiff's physical functioning.

Although both parties contend that the ALJ only made an implicit assignment of weight to the opinions rendered by Dr. Isaacs, a consultative examiner, the ALJ actually made an express assignment of "some weight." *See* Tr. 23 ("I give some weight to the opinions expressed by the examining State agency medical consultant at Exhibit 3F, but subsequent testing did not affirm the restrictions provided.") The problem, then, is not a failure to make an assignment of weight, but the failure to support the assignment with substantial evidence. The ALJ's contention that "subsequent testing" did not support Dr. Isaac's view that Plaintiff "would have a hard time functioning at a job that required repetitive lifting with both hands," Tr. 343, relied exclusively on one citation: a medical appointment in July 2017 where Plaintiff reported "improvement" in his left shoulder pain and improved range of motion. Tr. 23 (citing Tr. 519). That report relied solely on Plaintiff's subjective reporting, not any actual testing, and does not document any evaluation of Plaintiff's ability to lift. Tr. 519. In fact, Plaintiff still exhibited left shoulder tenderness on examination during that visit. Tr. 520. Moreover, that single medical appointment did not show any sustained improvement in Plaintiff's condition, since medical records only one month later showed continuing pain at a 7/10 level, and a physical examination with abnormal findings in the

bicipital tendon, along with left shoulder impingement. Tr. 456, 459. Further, Plaintiff continued to experience significant pain in his shoulder and undergo shoulder injections well after July, 2017. *See, e.g.*, Tr. 428 (injection from March 2018); 443-44 (injection from November 2017); 449-50 (injection from October 2017).

Additionally, the ALJ did not provide substantial evidence to support his assignments of "little weight" to the opinions of the non-examining State agency medical consultants. Tr. 22-23. Those physicians found Plaintiff limited to "light work" and "less than the full range of medium work," respectively, largely relying on limitations to Plaintiff's ability to reach and lift. Tr. 75, 89-90. Without further explanation, the ALJ gave little weight to their conclusions because "they are inconsistent with the claimant's conservative treatment history, his activities of daily living, and his objective medical findings." Tr. 22-23. In fact, a finding that Plaintiff retained the ability to work, but had certain limitations in lifting and reaching because of his shoulder injury, is entirely consistent with his history of prescription medications and shoulder injections, his ability to perform certain activities of daily living not involving heavy lifting, and the objective medical findings, including reduced range of motion in his shoulders and the injury reflected in the MRI. Absent some explanation of what the ALJ would expect to see in order to justify some reduction in residual functional capacity as a result of a shoulder injury, he has not provided substantial evidence supporting the assignments of little weight.

Although less significant than the flawed evaluation of Plaintiff's shoulder injury, the ALJ's assignment of "little weight" to the opinion of the psychological consultant, Dr. Heard, was similarly unsupported. Tr. 23. Dr. Heard indicated that Plaintiff's "intellectual ability is impaired and is likely in the borderline range." Tr. 23, 358. Dr. Heard accordingly suggested residual functional capacity restrictions in terms of the complexity of work, the amount of workplace

changes, and the pace Plaintiff could sustain. Tr. 23, 355-56. The ALJ's reasons for assigning Dr. Heard's opinion "little weight" were: (1) the claimant had no history of psychiatric hospitalization and was not currently engaged in psychotherapy or taking any psychotropic medication; (2) his mood was anxious but his affect was normal and he was cordial and cooperative; (3) collateral information about his mental health was not available to Dr. Heard, who did not conduct formal cognitive testing; (4) Plaintiff did not receive special education services in school; and (5) Plaintiff has had functional activities of daily living. Tr. 23. Those reasons do not undermine Dr. Heard's conclusions. Persons with intellectual limitations do not need to undergo psychiatric hospitalization or take psychotropic medication, and intellectual limitations do not necessarily affect mood or disposition. The ALJ does not cite any collateral information that would suggest Plaintiff has good, or even average, intellectual functioning. Because Plaintiff left school after sixth grade, the lack of special education services is less compelling in establishing whether he suffers intellectual limitations. Tr. 356. Finally, persons with intellectual limitations are not necessarily hampered in performing all activities of daily living, particularly those not requiring complex analysis or thought. The same flaw existed in the evaluations of Plaintiff's mental condition by the non-examining State agency psychological consultants, who found Plaintiff's mental limitations to be non-severe, citing the lack of "indication of [cognitive] deficits in [the medical evidence of record]." Tr. 73, 87. There is no indicia, however, that Plaintiff ever sought medical treatment for intellectual limitations, which had not hampered his ability to perform the simple, heavy labor he had performed prior to his onset date. Thus, the fact that the medical records are silent as to cognitive deficits does not undermine Dr. Heard's evaluation.

Ultimately, the ALJ has not provided substantial evidence to justify his determination that Plaintiff's many medically determinable diagnoses, particularly his shoulder impairment, failed to

meet even the *de minimis* standard of severity at step two. I therefore recommend remand so that the ALJ can either provide substantial evidence to justify his position, or complete the sequential evaluation.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment, ECF 18;
2. the Court DENY Plaintiff's Motion for Summary Judgment, ECF 16;
3. the Court REVERSE IN PART due to inadequate analysis the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g);
4. the Court REMAND this case to the SSA for further proceedings in accordance with this opinion; and
5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: July 1, 2019                                   /s/
                                       Stephanie A. Gallagher
                                       United States Magistrate Judge